# IN THE SUPREME COURT OF IOWA

No. 154 / 06–0672

Filed February 1, 2008

**CASANDRA LOBBERECHT** and **DAVID L. LOBBERECHT,** Individually and as Next Best Friends of KEIFFER LOBBERECHT, ADAM LOBBERECHT, and OLIVIA LOBBERECHT,

Appellants,

vs.

**AKELLA CHENDRASEKHAR** and **THE IOWA CLINIC, P.C.**,

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

Plaintiffs in medical-malpractice case appeal from summary judgment in favor of defendants. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

Alfredo Parrish and Tammy Westhoff Gentry of Parrish, Kruidenier, Moss, Dunn, Boles, Gribble & Cook, L.L.P., Des Moines, for appellants.

Robert D. Houghton of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees.

**LARSON**, **Justice**.

Casandra and David Lobberecht sued Dr. Akella Chendrasekhar and the Iowa Clinic for damages arising out of Dr. Chendrasekhar's allegedly negligent treatment of Casandra. The district court granted the defendants' motion for summary judgment on the ground the Lobberechts were not the real parties in interest, and the court of appeals affirmed. We vacate the decision of the court of appeals, affirm the judgment of the district court in part and reverse it in part, and remand.

## I. Facts and Prior Proceedings.

Casandra Lobberecht had gastric bypass surgery on December 18, 2002, by Dr. Chendrasekhar, a doctor employed by the Iowa Clinic, P.C. Lobberecht began experiencing abdominal pain, and on February 18, 2003, sought further treatment from Dr. Chendrasekhar, who suspected she suffered from inflammation of the gallbladder. Shortly thereafter, he performed surgery to remove Lobberecht's gallbladder. Her abdominal pain continued, however, and on March 29, 2003, she went to the Iowa Methodist Medical Center emergency room with severe pain. She was admitted to Iowa Methodist for pain control and additional tests to determine the source of her pain. Lobberecht underwent a test that revealed a fistula or an opening along the staple lines of her stomach pouch. Lobberecht was discharged from the hospital on April 2, 2003, and was told to return to Dr. Chendrasekhar for a follow-up after two to three weeks. On April 22, 2003, Lobberecht returned to the Iowa Clinic complaining of continued abdominal pain and a possible hernia. Dr. Chendrasekhar again noted the presence of the fistula and told Lobberecht that he would probably do repair work on the fistula during her hernia surgery. On April 26, 2003, just before the date of her

scheduled surgery, Lobberecht was admitted to the Iowa Methodist Medical Center with severe abdominal pain due to either the hernia or problems from the fistula. Surgery was performed on April 27, 2003, to repair the hernia and the fistula. However, the fistula was not addressed at that time due to excessive scar tissue. At Lobberecht's June 5, 2003 follow-up visit, Dr. Chendrasekhar noted that Lobberecht was doing well after the hernia surgery, although she began regaining some of her weight.

On May 28, 2003, the Lobberechts filed for chapter 7 bankruptcy. They did not list on their bankruptcy forms any potential medical-malpractice claim against the defendants. The Lobberechts received their discharge in bankruptcy on August 26, 2003.

On January 9, 2004, Lobberecht went to Mahaska Hospital with abdominal pain. Over the next seven months, Dr. Timothy Breon of the Mahaska Hospital performed several procedures intended to address the problems occurring as a result of the fistula.

On December 14, 2004, the Lobberechts filed suit against Dr. Chendrasekhar and the Iowa Clinic, claiming negligent performance of the gastric bypass surgery, negligent postoperative treatment, and wrongful performance of unnecessary gallbladder surgery. The defendants moved for summary judgment, claiming the plaintiffs lacked standing to bring the lawsuit because the bankruptcy trustee was the true party in interest. The district court agreed and granted summary judgment in favor of the defendants. The court of appeals affirmed, and the plaintiffs' application for further review was granted by this court.

## II. Scope of Review.

We review a district court's ruling on a motion for summary judgment for correction of errors at law. *Peppmeier v. Murphy,* 708

N.W.2d 57, 58 (Iowa 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The evidence presented must be viewed in the light most favorable to the party opposing summary judgment. *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000); *Gen. Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 276 (Iowa 1996).

### III. Disposition.

The single issue presented is whether the plaintiffs' medical-malpractice cause of action against the defendants belongs to them, as individuals, or to the bankruptcy estate. If the cause of action belongs to the bankruptcy trustee, the plaintiffs are not the real parties in interest.

On the filing of a chapter 7 bankruptcy petition, a bankruptcy estate is created, comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Eighth Circuit summarized a court's inquiry into whether property belongs to the bankruptcy estate:

> First, the court must decide whether the item constitutes "property" under § 541(a)(1). Second, the court should look to state law to ascertain the debtor's interest in the property . . . . Third, the court must find that the debtor had the property interest at the time of filing the bankruptcy petition.

*In re Mahendra*, 131 F.3d 750, 755 (8th Cir. 1997) (citations omitted). "The property of a bankruptcy estate is 'broadly defined,' . . . [and] includes all causes of action that the debtor could have brought at the time of the bankruptcy petition." *United States ex rel. Gebert v. Transp. Admin. Serv.*, 260 F.3d 909, 913 (8th Cir. 2001) (citations omitted). Whether a debtor has an interest in property at the time the bankruptcy

petition is filed is determined by state law. *In re Mahendra*, 131 F.3d at 755; *Collins v. Fed. Land Bank of Omaha*, 421 N.W.2d 136, 138 (Iowa 1988) ("Whether a trustee in bankruptcy succeeds to property of the debtor in a chapter 7 bankruptcy under 11 U.S.C. section 541(a)(1) turns on whether the debtor has a legal or equitable interest in the property under applicable state law at the time the bankruptcy petition is filed.").

In Iowa, a person has a legal interest in a cause of action when it accrues, and that occurs when "an aggrieved party has a right to institute and maintain a lawsuit." *Dolezal v. Bockes*, 602 N.W.2d 348, 351 (Iowa 1999). Here, we must determine when the plaintiffs' cause of action accrued to determine whether it is part of the bankruptcy estate. *See In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997) ("Our first task, then, is to determine whether Swift had a property interest in the causes of action against State Farm at the time he filed bankruptcy. Stated differently, we must determine whether Swift's causes of action had accrued."). The plaintiffs, relying on the statute-of-limitations provisions of Iowa Code section 614.1(9), contend that their cause of action for medical malpractice did not accrue until they knew, or should have known, they were injured. Section 614.1(9) provides that medical-malpractice cases must be brought

> within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, . . . of the existence of [] the injury or death for which damages are sought in the action, whichever of the dates occurs first . . . .

The plaintiffs argue that their medical-malpractice claim could not have accrued as of the date they filed for bankruptcy because, as of that date, they did not know, and could not reasonably have known, of their injury. Unfortunately for the plaintiffs, the present case is not a statute-of-limitations case. The statute of limitations under section 614.1(9)

determines when a cause of action is *lost* by passage of time. However, for bankruptcy purposes, the question is not when the cause of action was lost, but when it was *acquired.* In other words, *could* the plaintiffs have sued prior to May 28, 2003, the date they filed their bankruptcy petition? If so, the cause of action belonged to the trustee in bankruptcy and not the plaintiffs.

A federal court explained the distinction between accrual for statute-of-limitations purposes and accrual for bankruptcy purposes. As that court noted,

> the statute of limitations may begin to run on a date other than that on which the suit could first be maintained. A classic example illustrates this. Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient. At the time the doctor finishes the surgery, the doctor has completed a tort. He has violated a legal duty owed to the patient, and the patient was injured by that violation. If the patient instituted suit at this moment, his suit would be viable.

*Swift,* 129 F.3d at 796. The court in *Swift* concluded that the bankruptcy estate, not the plaintiffs, was the owner of the cause of action for negligence and breach of fiduciary duty, even though the plaintiffs' claim had not accrued for statute-of-limitations purposes at the time they filed their bankruptcy petition. *Id.* at 802. Thus, accrual for statute-of-limitations purposes is irrelevant to determining whether a cause of action has accrued for bankruptcy purposes.

In Iowa, a medical-malpractice cause of action accrues when "all the necessary elements have occurred." *Slater v. Farmland Mut. Ins. Co.,* 334 N.W.2d 728, 730 (Iowa 1983).

> To establish a prima facie case of medical malpractice, the plaintiff must submit evidence that shows the applicable standard of care, the violation of the standard of care, and a causal relationship between the violation and the harm allegedly experienced by the plaintiff.

*Peppmeier*, 708 N.W.2d at 61–62.

In this case, the plaintiffs' petition alleges the defendants were negligent in the following respects:

a.   In performance of the Roux-en-Y Gastric Bypass procedure utilizing an outdated and inadequate technique, below the current standard of care;

b.   In failing to completely divide the stomach as necessary for a successful outcome;

c.   In failing to properly and adequately perform an anastomosis of the gastric pouch to the small bowel of the Roux limb.

d.   In failing to exercise a degree of care and skill ordinarily exercised in the performance of such surgery under the conditions and circumstances then and there existing.

All of these acts occurred on December 18, 2002, the date of the surgery. As of that date, the plaintiffs' medical-malpractice cause of action had accrued for bankruptcy purposes, and the plaintiffs' right to sue was complete. The cause of action therefore became the property of the bankruptcy estate, and the district court and the court of appeals properly concluded that the plaintiffs were not the real parties in interest. However, the proper remedy is not to dismiss, but to allow a reasonable time, as determined by the district court, for substitution of the real party in interest. *See* Iowa R. Civ. P. 1.201. We vacate the decision of the court of appeals, affirm the judgment of the district court in part, reverse it in part, and remand.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

All justices concur except Appel, J., who takes no part.